IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JULIA CONE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.  2:07cv865-CSC |
| | ) | (WO) |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

**I.  Introduction**

The plaintiff applied for disability insurance benefits pursuant to Title II of the Social

Security Act, 42 U.S.C. § 401 et seq., and supplemental security income benefits under Title

XVI of the Social Security Act,  42 U.S.C. § 1381 et seq., alleging that she was unable to

work because of a disability.  Her application was denied at the initial administrative level.

The plaintiff then requested and received a hearing before an Administrative Law Judge

("ALJ").  Following the hearing, the ALJ also denied the claim.  The Appeals Council

rejected a subsequent request for review.  The ALJ's decision consequently became the final

decision of the Commissioner of Social Security (Commissioner).[1]  *See Chester v. Bowen*,

792 F.2d 129, 131 (11th Cir. 1986).  The case is now before the court for review pursuant to

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

42 U.S.C. §§ 405 (g) and 1631(c)(3). The parties have consented to the United States

Magistrate Judge conducting all proceedings in this case and ordering the entry of final

judgment, pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1. Based on the court's

review of the record in this case and the briefs of the parties, the court concludes that the

decision of the Commissioner must be reversed and this case remanded for further

proceedings.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the

person is unable to

> engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to result
> in death or which has lasted or can be expected to last for a continuous period
> of not less than 12 months . . .

To make this determination,[2] the Commissioner employs a five-step, sequential

evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920.

(1)     Is the person presently unemployed?
(2)     Is the person's impairment severe?
(3)     Does the person's impairment meet or equal one of the specific
        impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
(4)     Is the person unable to perform his or her former occupation?
(5)     Is the person unable to perform any other work within the economy?

An affirmative answer to any of the above questions leads either to the next
question, or, on steps three and five, to a finding of disability. A negative
answer to any question, other than step three, leads to a determination of "not

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

2

disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The standard of review of the Commissioner's decision is a limited one.  This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Ingram v. Comm. of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  A reviewing court may not look only to those parts of the record which supports the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ.  *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III.  The Issues

**A.  Introduction**.  Plaintiff Julia Cone ("Cone") was 40 years old at the alleged date of onset of disability and 49 years old at the time of the hearing before the ALJ.  (R. 58, 74

---

[3]  *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits.  Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker,* 651 F.2d 408 (5th Cir. 1981) (Unit A).

& 394). She has the equivalent of a twelfth grade education[4] and has completed truck driving school. (R. 82). The ALJ made no finding regarding her past relevant work experience, except to conclude that Cone "described her past relevant work as an assistant truck driver." (R. 22). Following the hearing, the ALJ concluded that the plaintiff has severe impairments of "major depression, partial remission, personality disorder, not otherwise specified, chronic obstructive pulmonary disease [,] arthritis, and hypertension." (R. 19). The ALJ concluded that the plaintiff could perform her past relevant work "as an assistant truck driver." (R. 22). Consequently, the ALJ concluded that the plaintiff was not disabled. (*Id*.).

**B. Plaintiff's Claims**. As stated by the plaintiff, she presents the following four issues for the Court's review:

1.  The Commissioner's decision should be reversed, because the ALJ erred by failing to determine that Ms. Cone's obesity placed significant limitations upon her ability to perform basic work activities.

2.  The Commissioner's decision should be reversed, because the ALJ's RFC finding lacks the support of substantial evidence.

3.  The Commissioner's decision should be reversed, because the ALJ improperly evaluated Ms. Cone's mental impairments, including the medical opinions expressed by Drs. Pilcher and Tessema in which support a disability finding.

4.  The Commissioner's decision should be reversed, because the ALJ erred by finding that Ms. Cone could perform her past relevant work as an "assistant truck driver."

(Pl's Br. at 13).

---

[4] The record demonstrates that Cone received her General Equivalency Degree ("GED"). (R. 82).

4

## IV.  Discussion

A disability claimant bears the initial burden of demonstrating an inability to return to her past work.  *Lucas v. Sullivan*, 918 F.2d 1567 (11th Cir. 1990).  In determining whether the claimant has satisfied this burden, the Commissioner is guided by four factors: (1) objective medical facts or clinical findings, (2) diagnoses of examining physicians, (3) subjective evidence of pain and disability, e.g., the testimony of the claimant and her family or friends, and (4) the claimant's age, education, and work history.  *Tieniber v. Heckler*, 720 F.2d 1251 (11th Cir. 1983).  The court must scrutinize the record in its entirety to determine the reasonableness of the ALJ's decision. *See Walker,* 826 F.2d at 999.  The ALJ must conscientiously probe into, inquire of and explore all relevant facts to elicit both favorable and unfavorable facts for review.  *Cowart v. Schweiker,* 662 F.2d 731, 735-36 (11th Cir. 1981).  The ALJ must also state, with sufficient specificity, the reasons for his decision referencing the plaintiff's impairments.  Within this analytical framework, the court addresses the plaintiff's specific claims, although not in the order presented.

**1. Failure to consider obesity**.  The plaintiff's entire argument regarding this issue is as follows.

> First, the Commissioner's decision should be reversed, because the ALJ erred by failing to determine that Ms. Cone's obesity placed significant limitations upon her ability to perform basis work activities.  The ALJ determined that Ms. Cone suffered from the following medically severe impairments:  major depression, partial remission, personality disorder, NOS, chronic obstructive pulmonary disease, arthritis, and hypertension (Tr. 19).  The ALJ's decision, however, failed to acknowledge the fact that Ms. Cone suffered from obesity, which is clearly denoted throughout the record.  In Williams v. Barnhart, the court noted that the claimant did not specifically list obesity as one of her

impairments, even though she had been diagnosed as obese on several occasions. 186 F.Supp.2d 1192, 1198 (M.D. Ala. 2002). "Despite these diagnoses, the ALJ failed to consider the claimant's obesity in determining the claimant's severe impairments, although it was evident at the hearing." Id. The court held that the ALJ's failure to consider or even address the claimant's obesity as a part of his determination of severity was reversible error. Id. Ms. Cone requests that this Court reverse or remand her case so that the effects and resulting limitations produced by her obesity may be considered upon her ability to work.

(Pl's Br. at 13-14). Beyond this repetitive and generalized statement about her obesity, Cone alleges no facts and points to no evidence in the record to support her position that her obesity places significant limitations on her ability to work. The burden is on the plaintiff to demonstrate that the Commissioner's decision is not supported by substantial evidence, and the argument of counsel is simply insufficient to meet this burden. *See generally Road Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994) (It is not the court's responsibility to seek out facts in support of the plaintiff's position.).

More importantly, however, the objective medical evidence of record does not demonstrate that any treating or consultative physicians placed limitations on Cone due to her obesity.[5]  Consequently, she is entitled to no relief on this basis.

**2. Failure to properly consider mental impairment.**  The plaintiff argues that the ALJ failed to properly consider her mental impairment.  Specifically, Cone argues that she suffers from bipolar disorder and thus, the ALJ's conclusion that she has "over-

---

[5] Notwithstanding the lack of medical evidence, the ALJ included morbid obesity in his hypothetical questions to the vocational expert. (R. 416). The fact that the ALJ ultimately concluded that Cone's obesity did not place significant limitations on her ability to work does not mean he did not consider it.

characterized" her mental impairment is not supported by substantial evidence.[6] *See* Pl's Br.

at 15.  Substantial evidence before the ALJ supports his determination that Cone's alleged

bipolar mood disorder did not constitute a severe impairment.[7]

In August 1995, the plaintiff saw Dr. Kenneth Crowe complaining of hypertension,

recurrent boils, and weight gain.  She described having "fears, anxieties, mood swings and

irritability and is wondering if she needs something for her nerves."  (R. 153).  Dr. Crowe

prescribed Paxil.  (*Id*.).  On August 19, 1996, Cone denied that she was suffering from

depression.  (R. 152).  On June 17, 1998, Cone saw Dr. Crowe complaining of fatigue,

insomnia, and irritability. (R. 149).  At that time, she requested a prescription for Prozac.

(*Id.*).  Cone was diagnosed as suffering from "probable depression," possibly due to her

hypertension medication.  (*Id*.).  In 1999, Cone saw Dr. Crowe complaining of stress and

seeking Paxil to alleviate her depression.  (R. 146-48).  On October 20, 2000, Cone saw Dr.

Crowe and was tearful.  She admitted that she had not been taking Paxil for several months.

(R. 145).

---

[6]  The plaintiff seizes on a single statement by the ALJ that she contends is not supported by substantial evidence.  Cone challenge the ALJ's finding that "[a]lthough the claimant has alleged having bipolar disorder, with hallucinations, . . ., this is an over characterization of her mental impairment."  (R. 19).

[7]  Records submitted to the Appeals Council indicate for the first time that Cone may be suffering from bipolar disorder.  (R. 376-379).  A single treatment note from South Central Alabama Mental Health reads as follows:

> Dx. adjustment  Records from 5-04 *suggest* bipolar dx & psychotic dx.  Pt. has been treated [with] mood stabilization & antipsychotics with good results.  The hx. & med. resp. is very consistent bipolar d/o.  I rec. pt. cont with Trileptal,& Abilify, Lexapro to treat current mixed state."

(R. 376) (emphasis added).

On January 2, 2001, Cone complained that her depression was increasing and Dr. Crowe increased the dosage of her Paxil. (R. 145). Dr. Crowe continued to prescribe Paxil to Cone until February 20, 2002. (R. 143-44). At no time did Dr. Crowe suggest that Cone might be suffering from bipolar disorder.

In September 2002, Cone saw Dr. Robert Haddad complaining about hypertension, chronic obstructive pulmonary disease (COPD), osteoarthritis and depression. (R. 228). Although she reported being depressed and anxious, Dr. Haddad noted that Cone was in no acute distress; she was alert, cooperative and appropriate. (R. 229-30). She also had no "apparent delusions, illusions, or hallucinations." (R. 231). On November 21, 2002, Cone presented to Dr. Haddad complaining of depression and anxiety. (R. 222). Because she was "facing considerable stress," she believed her Effexor medication should be doubled. (*Id.*). On February 18, 2003, Cone reported that the Effexor medication was helping her depression "significantly." (R. 219).

On April 24, 2003, Cone went to the South Central Alabama Mental Health clinic complaining of depression and being asocial. (R. 260, 275). During her intake assessment, she reported a history of depression, poor sleep and stress related to being the family caretaker. (R. 269, 276). Her mood was depressed but her affect was appropriate. (R. 263). She was calm, and had adequate insight. (*Id.*) She also reported auditory hallucinations. (*Id.*). She was diagnosed as suffering from "Major Depressive Disorder with recurrent partner relational problems and personality disorder (dependence traits)." (R. 259, 277). She was not diagnosed as suffering from bipolar mood disorder.

8

Notwithstanding her suggestion on July 21, 2003 that she might be bipolar, Cone's diagnoses and treatment has remained consistent for depression and personality disorder, not bipolar disorder. (R. 244-45, 248, 252-54, 256, & 326).

On June 13, 2003, Cone saw Dr. Haddad complaining that she was "having some problems now." (R. 212). At that time, Dr. Haddad took Cone off of her hypertension medicine Inderal because he suspected that it might be causing her depression. (*Id*.). On December 1, 2003, Cone asked Dr. Haddad to increase her Lexapro prescription. (R. 206).

Cone applied for disability benefits on January 20, 2004, complaining in part of "memory problems, high blood pressure, depression and bipolar." (R. 77). The medical records demonstrate that, although Cone has suggested several times that she suffers from bipolar disorder, none of her doctors have concurred with her self-diagnosis.

On February 29, 2004, Cone saw Dr. W.G. Brantley, Ph.D, for a psychological consultative evaluation. (R. 160). She described her problems as "Bipolar and Depression." (*Id*.). Dr. Brantley's "[o]bservations . . . support a diagnosis of Major Depression, Recurrent, In Partial Remission, and Personality Disorder, NOS, With Some Dependent Traits." (*Id*.). Dr. Brantley noted that Cone was "[t]alkative and normal," and she "showed quite a sense of humor during the entire interview." (R. 161). Both her mood and affect were stable. (*Id*.). Her thought process and content were normal and there was "[n]o evidence of any psychotic features, hallucinations, or delusions. There was no evidence of any moderate or marked depression or anxiety." (R. 161-62).

On May 26, 2004, Cone went to the mental health clinic suspicious and hostile. She

9

was suffering from mild depression. She complained of auditory hallucinations and delusions. She asserted that she had a "social phobia, [and] thus, [was] unable to work." (R. 251). The clinic doctor prescribed Abilify. (*Id*.) When Cone returned to the clinic on July 14, 2004, she complained of being depressed and having hallucinations. (R. 250). She admitted she had not taken the prescribed medication, Abilify. (*Id*.). Dr. Pilcher noted that Cone appeared normal but he completed a medical source form that indicated Cone had marked or severe limitations resulting in "an inability to function in public due to pananoia." (R. 240-42).

On August 19, 2004, Cone reported suffering depression due to her "rough life." Again, she was diagnosed as suffering from major depressive disorder, mild, recurrent, and personality disorder. (R. 248). She was not diagnosed as suffering from bipolar disorder. It was also noted that she was non-compliant with treatment. (*Id*.). On August 25, 2004, Cone went to the mental health clinic complaining about not "getting along with anybody, e.g. daughter blaming her for not properly babysitting grandson." (R. 245). She still had not taken the Abilify medication. (*Id*.)

On September 22, 2004, Cone's mental status was appropriate and level. She reported getting along better with her daughter. She was continued on Lexapro, Trileptal and Abilify. (R. 244).

On November 16, 2004, Cone had another psychological consultative evaluation. Her chief complaint to Dr. Tessema was that she was diagnosed three years earlier with bipolar mood disorder. (R. 314-13). Although Dr. Tessema diagnosed her as "Bipolar II disorder,"

10

he did so with the caveat that it was "by history." (R. 316). Again, Cone's diagnosis of bipolar appears to be a self-diagnosis as no physician, psychiatrist or psychologist has determined independently that Cone is bipolar.

None of the medical records before the ALJ suggested a diagnosis of or treatment for bipolar mood disorder, notwithstanding Cone's own suggestions to her doctors. Although Cone contends that she has been diagnosed with bipolar mood disorder, the records demonstrate that bipolar disorder was not considered a possible diagnosis until March 2006, long after Cone contends she was diagnosed. (R. 376). Even though Cone has been prescribed Abilify, a common treatment for bipolar disorder, the drug is also an appropriate treatment for patients with Major Depressive Disorder. *See* http://www.abilify.com/abilify/home/index.jsp?BV_UseBVCookie=Yes ("Abilify is indicated for [a]dd-on treatment to antidepressants for major depressive disorder in adults.") Consequently, the mere fact that Cone is taking Abilify is insufficient to demonstrate that she suffers from Bipolar disorder particularly since Abilify is a common treatment for Major Depressive Disorder.

Admittedly, consultative physician Dr. Tessema diagnosed Cone with bipolar disorder, however, it was "by history" only. (R. 316). During his evaluation, Dr. Tessema noted that Cone was "alert and oriented"; "in no form of distress"; "calm and cooperative with good eye contact": "speech was coherent, goal directed"; "[n]o delusions"; and "[i]nsight and judgment were fair to good." (R. 316). It is clear from a review of the record that the ALJ properly considered all of the evidence available to him and on the basis of that evidence, properly considered all of Cone's mental impairments. The court concludes that

11

substantial evidence supports the ALJ's determination that Cone suffers from severe impairments of depression and a personality disorder, but not bipolar disorder.

**3. Residual Functional Capacity and Past Relevant Work Determinations.** The plaintiff argues that the ALJ's residual functional capacity ("RFC") finding is not supported by substantial evidence, and that he erred in concluding that she is able to return to her past relevant work as an "assistant truck driver." (Pls' Br. at 13 & 15). The court is forced to conclude that because the ALJ erred as a matter of law, this case is due to be remanded for further proceedings.

The ALJ concluded that the plaintiff has "the residual functional capacity to lift or carry no more than 10 pounds or prolonged standing or walking. The claimant can only perform unskilled work." (R. 20). Thereafter, the ALJ concluded that Cone

> described her pat (sic) relevant work as an assistant truck driver, (1995 to 1997), as a sedenta4ry, (sic) unskilled job (See Exhibit 2E page 3). This work (as actually performed by the claimant) does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.920(f)).

(R. 22). Thus, the ALJ concluded that Cone could perform her past relevant work as an "assistant truck driver." (*Id.*)

"The regulations require that the claimant not be able to perform [her] past *kind* of work, not that [s]he merely be unable to perform a specific job he held in the past." *Jackson v. Bowen*, 801 F.2d 1291, 1293 (11th Cir. 1986). The ALJ concluded that because Cone could return to her past relevant work as an assistant truck driver *as she performed the job*, she was not disabled. His conclusion is erroneous as a matter of law. "We follow the First,

Second, and Fourth Circuits in holding that a claimant must demonstrate an inability to return to the previous type of work [s]he engaged in." *Jackson*, 801 F.2d at 1293-94.

The ALJ's error is compounded by the fact that there is no evidence in the record to support a conclusion that Cone's past relevant work as an "assistant truck driver" as performed generally constituted sedentary work. There is no listing for an "assistant truck driver" in the Dictionary of Occupational Titles. The only analogous listing is for a "truck driver helper" which is classified as heavy work. DICTIONARY OF OCCUPATIONAL TITLES § 905.687-010 (4th ed.). Other listings in the dictionary include truck driver, light, § 906.683-022, and truck driver, heavy, § 905.663-014, both of which have medium strength requirements.

Although a vocational expert testified at the administrative hearing, the ALJ did not ask the expert about Cone's past relevant work as an assistant truck driver. (R. 415). In fact, the vocational expert testified that Cone's "work as a truck driver is also at medium range with a SVP of 4." (*Id.*). The vocational expert also testified that if Cone could perform medium work, she could return to her past relevant work as a school bus driver, and if she could perform light work, she could return to her past relevant work as a sewing machine operator. (R. 416). The ALJ did not ask the vocational expert whether Cone could return to her past relevant work as a truck driver or even as an assistant truck driver. (R. 415-16).

Consequently, the court concludes that the ALJ's determination that because the plaintiff has the residual functional capacity to perform sedentary work, she can return to her past relevant work as an assistant truck driver is not supported by substantial evidence. On

13

remand, the ALJ should more fully develop the record regarding the plaintiff's past relevant work as it relates to her residual functional capacity.

### V.  Conclusion

Accordingly, for the reasons as stated and for good cause, it is

ORDERED that the decision of the Commissioner be and is hereby REVERSED and REMANDED to the Commissioner for further proceedings consistent with this opinion.  It is further

ORDERED that the plaintiff's motion for leave to file a reply brief (doc. # 20) be and is hereby DENIED as moot.  Finally, it is

ORDERED that, in accordance with *Bergen v. Comm'r of Soc. Sec.*, 454 F.3d 1273, 1278 fn. 2 (11th Cir. 2006), the plaintiff shall have **sixty (60)** days after she receives notice of any amount of past due benefits awarded to seek attorney's fees under 42 U.S.C. § 406(b). *See also Blitch v. Astrue*, 261 Fed. Appx. 241, 242 fn.1 (11th Cir. 2008).

A separate final judgment will be entered.

Done this 18th day of July, 2008.


_____/s/Charles S. Coody_____
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE

14